Filed at 11:32 AM 6/29/2013
Deputy Clerk, U.S. District Court
Middle District of Georgia

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES OF AMERICA        :
                                :       CRIM. NO. 5:12-CR-105 (MTT)
vs.                             :
                                :
LAUSHAUNDRA EVANS               :
                                :

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and LaShaundra Evans, hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney, and Defendant's attorney has explained to Defendant her understanding of the Government's evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' proof, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

1



but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Defendant, therefore, agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence, and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)   The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Indictment which charges Defendant with Conspiracy to Commit Food Stamp Program Fraud, in violation of Title 18, United States Code, Section 371 i/c/w Title 7, United States Code, Section 2024(b) and Title 18, United States Code, Section 2.



(B)     That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant on Count One to a maximum sentence of five (5) years imprisonment, a maximum fine of $250,000.00, or both, and a term of supervised release of three (3) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00.

(C)     The Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigative Report and found by the Court to be the correct guideline range.

(D)     The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigative Report has been completed. The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the Presentence Investigative Report and challenge any facts reported therein. The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Presentence Investigative Report or the Court's rulings thereon will not be grounds for withdrawal of the plea of guilty.

(E)     Defendant understands and has discussed with Defendant's attorney that after the Court determines the applicable guideline range of this case, the Court has the authority under



certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

(F)   Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)   Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A in the amount of Fourteen Thousand Four Hundred and Sixty Dollars ($14,460.00) and that Defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H)   Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or other collateral review of Defendant's sentence in any court. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range, then the Defendant shall retain only the right to pursue a timely appeal directly to the Court of Appeals after the District Court imposes its sentence. In the event that the Defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.

Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney appeals the Defendant's sentence pursuant to this statute, the Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.



(I)     Defendant and the Government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

The United States of America and Defendant hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the Indictment, would: (a) not relieve the Defendant of Defendant's plea of guilty; (b) permit the Government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Indictment; (c) permit the Government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the Government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.



(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)    That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant. The United States Attorney agrees to dismiss the remaining counts of the pending Indictment, if any, in exchange for Defendant's plea of guilty to Count One of the Indictment.

(B)    If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Federal Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive an appropriate downward departure for such acceptance. It is entirely within the Court's discretion whether or not the Defendant would be entitled to any reduction based upon an acceptance of responsibility. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying her involvement, giving conflicting statements as to her involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.



(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigative Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the Government could prove the following beyond a reasonable doubt:

The Federal Food Stamp Program ("Food Stamp Program") is a governmental program administered by the United States Department of Agriculture ("USDA") through Food and Nutrition Services. The Food Stamp Program was established by Congress to alleviate hunger and malnutrition. The Food Stamp Program provides low-income people the opportunity to obtain a more nutritious diet through the use of food stamp benefits. Food stamp benefits are

7



similar to United States currency in that recipients can purchase food from authorized retail participants who are then paid for the food through the food stamp settlement process.

Food stamp recipients in Georgia receive an allotted amount of food stamp benefits per month which they redeem using an Electronic Benefit Transfer ("EBT") card to purchase food from authorized retail participants. Qualifying for food stamp benefits is based on income and need.  Georgia recipients are informed that food stamp benefits redeemed through the use of an EBT card can be used to purchase food only.  Recipients know the EBT card cannot be used to purchase alcohol or tobacco items nor can the EBT card be used in any manner to obtain cash. Furthermore, the recipients are required to sign a Rights and Responsibilities Form stating that they agree not to trade their food stamp benefits or EBT cards for cash, acknowledging that such activity is illegal.

Likewise, retailers participating in the program are instructed and cautioned that the food stamp benefits deposited on EBT cards can only be accepted and redeemed in connection with the sale of eligible food items.  The participating retailers are instructed that it is illegal to, and that they are prohibited from debiting the EBT cards for cash. The retailers sign a form attesting to the understanding of the Food Stamp Program's rules and regulations.

### SHINHOLSTER'S GROCERY AND MARKET CONSPIRACY

Beginning on June 7, 2006, and continuing through on or about March 7, 2011, in the Middle District of Georgia in Wilkinson County, Shinholster's Grocery and Market ("Shinholster's") was owned and operated by Elbert Eugene Shinholster, Sr. ("Shinholster") and located at 71 Martin Luther King Jr. Road, Irwinton, Georgia. During this same time period, Shinholster's was a retail store participant in the Food Stamp Program. As an authorized retail



participant, Shinholster possessed a "point of sale" machine used to redeem food stamp benefits deposited on an EBT card.

During the time period set out above, the Defendant conspired with Shinholster to defraud the Food Stamp Program. As a food stamp recipient, Defendant possessed an EBT card. The Defendant would contact Shinholster or an employee at Shinholster's, namely Rashaun Shinholster, Shinholster's grandson ("Rashaun"), and make arrangements to obtain cash from her EBT card. Defendant would then provide her EBT card and/or card number and her Personal Identification Number ("PIN") to allow the transaction to be processed through the "point of sale" terminal at Shinholster's.

Shinholster and/or Rashaun would then run Defendant's EBT card and/or card number and PIN through the "point of sale" machine for an amount which included the amount of cash the Defendant requested, any legitimate grocery purchases, as well as a percentage of cash that Shinholster would retain for himself. The standard percentage that Shinholster required was thirty percent (30%). Defendant and Shinholster would then each retain their respective portion of the cash debited from Defendant's EBT card. Specifically, Defendant provided the last eight (8) digits, the only digits that distinguish Defendant's EBT card from any other EBT card, to wit: 5016 0352 and her PIN, to wit: 0916, to place an order for cash in the amount of $400 to $572 from Shinholster.

The Defendant admits that she defrauded the Food Stamp Program for Ten Thousand Four Hundred and Thirty Four dollars ($10,434.00) over the nearly five year period. Further, the Defendant admits she owes restitution from her illegal transactions at Shinholster's in the amount of $10,434.00 to the Department of Health and Services.



## NORTHWIND MINI MART CONSPIRACY

Beginning on January 7, 2010, and continuing through on or about November 7, 2010, in the Middle District of Georgia, Northwind Mini Mart ("Northwind") was owned by Alfred Boyd ("Boyd") and located in the backyard of his residence at 318 Northwind Circle, McIntyre, Georgia. During this same time period, Northwind was an authorized retail participant in the Food Stamp Program. As an authorized retail participant, Boyd possessed a "point of sale" machine used to redeem food stamp benefits.

During the time period set out above, Defendant conspired with Boyd to defraud the Food Stamp Program. As a food stamp recipient, Defendant possessed an EBT card. The Defendant would contact Boyd or an employee at Northwind, namely Chiquita Boyd, Boyd's niece ("Chiquita"), and make arrangements to obtain cash from her EBT card. Defendant would then provide her EBT card and/or card number and her PIN to allow the transaction to be processed through the "point of sale" terminal at Northwind.

Boyd and/or Chiquita would then run Defendant's EBT card and/or card number and PIN through the "point of sale" machine for an amount which included the amount of cash the Defendant requested, any legitimate grocery purchases, as well as the percentage of cash that Boyd would retain for himself. The standard percentage Boyd required was forty-five percent (45%). Defendant and Boyd would then each retain their respective portion of the cash debited from Defendant's EBT card.

The Defendant admits that she defrauded the Food Stamp Program for Four Thousand and Twenty Six dollars ($4,026.00) over the period set forth above. Further, the Defendant admits she owes restitution from her illegal transactions at Northwind in the amount of $4,026.00 to Department of Health and Services.



## RESTITUTION

If the Defendant is still eligible to receive benefits from the Food Stamp Program, Defendant understands that the total restitution amount of $14,460.00 will be subtracted from those benefits at a monthly rate which the Department of Health and Services deems appropriate. This amount will be deducted until the entire amount of restitution has been paid in its entirety to the Government. The Defendant understands that if she is no longer eligible for the Food Stamp Program the restitution will still be owed with payments to be made as determined by the Court.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 29th day of July, 2013.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY: *[signature]*
JULIA C. BOWEN
ASSISTANT UNITED STATES ATTORNEY



I, LASHAUNDRA EVANS, have read this agreement and had this agreement read to me by my attorney, Christina L. Hunt. I have discussed this agreement with my attorney, and I fully understand it and agree to its terms.

_____
LASHAUNDRA EVANS
DEFENDANT

I, Christina L. Hunt, attorney for Defendant LASHAUNDRA EVANS, have explained the Indictment and the Government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
CHRISTINA L. HUNT
ATTORNEY FOR DEFENDANT

